IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2002

## MICHAEL O. BROWN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lincoln County**
**No. S0000009    Charles Lee, Judge**

_____

**No. M2001-00917-CCA-MR3-CD - Filed August 8, 2002**

_____

The petitioner, Michael O. Brown, appeals the Lincoln County Circuit Court's denial of post-conviction relief. In his post-conviction petition, he challenged his 1996 conviction of selling cocaine by alleging ineffective assistance of trial counsel. Because the record supports the trial court's denial of post-conviction relief, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOE G. RILEY, J., joined. JOSEPH M. TIPTON, J., filed a concurring opinion.

Merrilyn Feirman, Nashville, Tennessee, and Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the Appellant, Michael O. Brown.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; W. Michael McCown, District Attorney General; and Weakley E. Barnard and Ann Filer, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

The petitioner was convicted by a jury of selling cocaine to Patrick Howell, an undercover agent of the Tennessee Bureau of Investigation (T.B.I.). As a Range II offender, the petitioner received a 20-year sentence in the Department of Correction. His conviction of the Class B felony was affirmed on direct appeal. *See State v. Michael Brown*, No. 01C01-9711-CC-00518 (Tenn. Crim. App., Nashville, Sept. 24, 1999).

We glean our knowledge of the facts of the cocaine offense from our opinion in *Michael Brown*. In response to the request of T.B.I and Lincoln County officers, Francine Strong, a confidential informant, set up a "drug buy" on January 25, 1995 at Sandra Oden's apartment in Fayetteville. *Id.*, slip op. at 2-3. Agent Howell, working undercover and fitted with a transmitting "wire," went to the apartment with Oden and Strong. Deputy Sheriff Robert Brisco, who

maintained surveillance outside the apartment, testified at trial that the petitioner arrived in a Cadillac and entered Oden's apartment in the company of a woman named Beverly Brown. *Id.* Agent Howell and Strong testified that, inside the apartment, the petitioner sold cocaine to Agent Howell for a cash payment of $175. *Id.*, slip op. at 3-4.

The petitioner's post-conviction petition alleged several claims of ineffective assistance of his trial counsel, Lionel Barrett, including that counsel failed to move to strike the testimony of Deputy Brisco following a *Jencks* violation and failed to alert the trial court that Agent Howell had recanted his testimony. Appointed counsel amended the *pro se* petition to allege additional claims of ineffective assistance of counsel, and the post-conviction court limited the petitioner to the issues set forth in his amended petition, even though the amended petition stated that the "petitioner relies upon the averments in his original pro-se petition."

At the post-conviction hearing, the petitioner testified that he was not the person who sold cocaine to Agent Howell in Oden's apartment on January 25, 1995, that he was not present when the transaction occurred, and that he "didn't know why [he] was being prosecuted" by Agent Howell. Although the case was set for trial on July 22, 1996, he thought as late as July 18, 1996, that the charge would be dismissed. He met with his trial counsel on July 18 and learned that the state was proceeding to trial and that his attorney had not interviewed the witnesses who were named in the state's responses to his motions for discovery and a bill of particulars. Mr. Barrett brought the drug transaction tape and played it for the petitioner, who told Mr. Barrett that he wanted it checked for "voice prints." The petitioner requested that his attorney seek a continuance to allow time to have the tape checked. Although the petitioner was unsure whether his counsel moved for a continuance, no continuance was granted.

The petitioner also testified at the post-conviction hearing that he did not hear until trial about the presence of Beverly Brown, his cousin, at Oden's apartment on January 25, 1995. When Agent Howell and Ms. Strong testified at the trial that the petitioner sold cocaine to Howell, the petitioner wanted to testify so he could deny that he was present. He claimed he was frustrated in his bid to testify by his counsel, who did not confer with him about testifying. He asserted that counsel did not advise him about testifying and did not tell him that it was his decision; however, he admitted on cross-examination that he knew that he had the right to testify and to decline to testify and that he did not tell Mr. Barrett that he wished to testify. The petitioner testified at the post-conviction hearing that, at trial, Mr. Barrett failed to advise him that some, if not all, of the prior convictions were inadmissible for impeachment purposes. He asserted that the prior convictions would "taint the whole trial [and he] would have been found guilty based on something [he] was allegedly . . . convicted of years ago."

The petitioner further testified that, following the trial but before the motion for new trial was heard, Mr. Barrett told him that Agent Howell had stated to Barrett that Howell mistakenly identified the petitioner as the person who sold him drugs on January 25, 1995. The petitioner claimed that Barrett refused to present this development to the trial court. The petitioner also testified that, before the motion for new trial was heard, he obtained affidavits from Strong and

Beverly Brown that the petitioner was not the man who sold drugs to Howell on January 25, 1995. Beverly Brown did not testify at trial, but Strong's affidavit indicated that she committed perjury when she testified that the petitioner sold the drugs to Howell. Copies of the affidavits were presented to the post-conviction court. The petitioner claims to have relayed the affidavits to Mr. Barrett through another attorney but that they were never presented to the court.[1]

Francine Strong testified at the post-conviction hearing that she did not testify truthfully at the petitioner's trial when she identified the petitioner as the man who sold cocaine to Howell in Oden's apartment. She stated that she was not questioned by Mr. Barrett prior to trial, that she was pressured into testifying against the petitioner by members of the drug task force, and that, had she been interviewed by defense counsel prior to trial, she would not have identified the petitioner as the offender.

Mr. Barrett testified for the state at the evidentiary hearing that he has 33 years of experience as a criminal defense lawyer, including his service in fifteen death penalty cases. He stated that, pursuant to his motions for discovery and a bill of particulars, he was informed of all of the witnesses' names except Beverly Brown. With the exception of the emergence of Ms. Brown's name during trial, the state's proof unfolded as anticipated.

Mr. Barrett was "certain" that both prior to and during the trial he discussed the issue of testifying with the petitioner. Mr. Barrett advised the petitioner that, although it was the petitioner's decision, he should not testify. At the evidentiary hearing, Mr. Barrett opined that not testifying was the proper decision regardless whether the petitioner's prior drug convictions could be used to impeach him. Mr. Barrett believed that the petitioner's demeanor while testifying would have alienated the jury.

Mr. Barrett "absolutely" denied that Agent Howell told him that Howell had testified falsely or had mistakenly identified the petitioner as the man who sold drugs to Howell.

Mr. Barrett was unable to locate Francine Strong at her workplace prior to trial but interviewed Ms. Oden on the day of trial, prior to her testimony. He believed he interviewed Agent Howell before trial.

Mr. Barrett opined that a scientific analysis of the drug transaction tape would have been a waste of time because of the poor quality of the tape and the lack of any indicia of tampering. In short, he discerned neither a basis for having the tape tested nor a basis for suppressing the tape as evidence. He did not recall whether he moved the trial court for a continuance, but he recalled that the reason the petitioner wanted the continuance was to have the tape checked, not to investigate Beverly Brown, whose name did not surface until the trial.

---

[1] The petitioner's trial record was not submitted in the evidentiary hearing; however, this court's opinion in *Michael Brown* reveals that Ms. Brown's affidavit was submitted in an offer of proof "at the motion for new trial."

Mr. Barrett defended his failure to move for a judgment of acquittal at the close of the state's proof on the grounds that no credible basis for such a motion existed. He also disagreed that the prosecutor presented any objectionable closing argument and opined that otherwise he did not object to a portion of the argument that the petitioner now characterizes as vouching for a state witness because to have done so would have only exacerbated any prejudice by calling attention to the alleged vouching.[2] Finally, Mr. Barrett testified that, at the sentencing hearing, he established that the defendant on two reported Rutherford County convictions was a Michael A. Brown, not the petitioner, who is Michael O. Brown.

Agent Patrick Howell testified that he "absolutely" did not tell Mr. Barrett that he had falsely or mistakenly identified the petitioner as the man who sold cocaine to him in Oden's apartment on January 25, 1995.

After hearing the above evidence, the court denied post-conviction relief.

Before beginning our discussion of the issues on appeal, we review a few basic principles of law. The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). On appeal, the appellate court accords to the trial court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-89 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

All of the petitioner's post-conviction issues are grounded upon claims that he received ineffective assistance of counsel. The Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims constitutionally ineffective assistance of counsel, the standard applied by the courts of Tennessee to determine the adequacy of counsel's performance is "[w]hether the advice given or the service rendered by the attorney [is] within the range of competence demanded [of] attorneys in criminal cases." *Summerlin v. State*, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In *Strickland v. Washington*, the United States Supreme Court outlined the requirements necessary to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. *Id.* at 687, 104 S. Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him and that the errors were so serious as to deprive the petitioner of a fair trial, calling into question the reliability of the outcome. *Id.*, 104 S. Ct. at 2064; *Henley*, 960 S.W.2d at 579.

---

[2]In *Michael Brown*, we determined that the prosecutor's comments were not improper. *Michael Brown*, slip op. at 8.

"When addressing an attorney's performance it is not our function to 'second guess' tactical and strategic choices pertaining to defense matters or to measure a defense attorney's representation by '20-20 hindsight.'" *Henley*, 960 S.W.2d at 579 (quoting *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). Rather, a court reviewing counsel's performance should "eliminate the distorting effects of hindsight . . . [and] evaluate the conduct from the perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). On the other hand, "deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *Id.*

To establish prejudice, a party claiming ineffective assistance of counsel must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

In reviewing a claim of ineffective assistance of counsel, an appellate court need not address both prongs of *Strickland* if it determines that the petitioner has failed to carry his burden with respect to either prong. *Henley*, 960 S.W.2d at 580.

We divide our analysis into two parts. First, we will consider the trial court's limitation of post-conviction issues to those contained in the "Amended Petition for Post-conviction Relief."[3] Second, we will consider the post-conviction claims that *were* adjudicated by the lower court and that have been presented on appeal.

### I. The Lower Court's Rejection of Claims Contained in the Original Petition.

In his original, *pro se* petition, the petitioner raised the issue of ineffective assistance of counsel, claiming that trial counsel failed:

1. To seek suppression of the tape of the drug transaction;

2. To seek a continuance to allow time to interview Beverly Brown;

3. To seek to have Robert Brisco's testimony stricken on the grounds of a *Jencks* violation;

---

[3]We point out that the petitioner identified only one issue in his appellate brief, whether he had received ineffective assistance of counsel. He did not identify the trial court's alleged error in limiting the post-conviction issues as a separate appellate issue, as we believe he should have. *See* Tenn. R. App. P. 27(a)(4). Nevertheless, we will give the petitioner the benefit of the doubt that the limitation issue could loosely be construed as a sub-issue of an ineffective assistance of counsel claim.

4. To move for a judgment of acquittal at the close of the state's proof;

5. To object to the prosecutor's vouching for a state witness during final argument;

6. To alert the court of Agent Howell's false testimony; and

7. To object to the prosecution's use of certain prior convictions for sentence enhancement purposes.

After the petition was filed, counsel was appointed, and counsel filed an amended petition, which alleged that trial counsel ineffectively assisted the petitioner by failing:

1. To interview the state's witnesses;

2. To interview and/or subpoena defense witnesses;

3. To adequately advise the petitioner of his rights to testify and to decline to testify;

4. To adequately communicate with the petitioner during the course of the trial;

5. To advise the petitioner of rights of appeal;

6. To perfect the petitioner's application for discretionary appeal to the Tennessee Supreme Court; and

7. To take action to utilize the information supplied by Beverly Brown and Francine Strong in their respective affidavits.

At the post-conviction hearing, the petitioner's counsel prefaced his opening remarks by stating that "the issues that we have planned to travel on . . . deal specifically with . . . ineffective assistance of counsel. If I can go down through my amended petition and possibly cover those." Thereafter, he highlighted the issues raised in the amended petition and said that those issues would be the ones he would raise during the hearing. When the petitioner's counsel began to cross-examine trial counsel at the evidentiary hearing about the *Jencks* issue with respect to Deputy Brisco, the state objected on the ground that the *Jencks* issue was derived from the original petition, not the amended petition. The lower court sustained the objection. The court remarked that, although counsel "very cleverly said [in the amended petition he was] relying upon [the] amendments plus everything else that is in the *pro se* petition," the court seeks to refine "kitchen sink" *pro se* petitions by asking counsel to file amended petitions. Evidently the court then views the amendment to be the

equivalent of a restated petition. When the post-conviction judge saw that the amended petition in this case recited the petitioner's reliance upon the allegations in the original petition, he asked counsel to "tell [him] what we are here on today." The judge then excluded any testimony about the alleged *Jencks* violation because it was not included in the amended petition and was not mentioned in counsel's opening statement; accordingly, the state, the court ruled, was not on notice that the *Jencks* issue would be presented.

On appeal, the petitioner takes the view that the amended petition was an amendment to the *pro se* petition, essentially equivalent to a supplement. We believe that this view of an amended petition has support in our law. When a *pro se* post-conviction petition is filed and counsel is appointed or retained, counsel "shall be required to review the pro se petition, file an amended petition asserting *other* claims which petitioner arguably has or a written notice that no amended petition will be filed." Tenn. R. Sup. Ct. 28, § 6(C)(2) (emphasis added). After the state responds to the petition, the post-conviction court is directed to conduct a colorable claim review by reviewing *both* the petition and the amended petition. *Id.* § 6(B)(6). At the hearing, the post-conviction court must freely allow amendments to the petition "when the presentation of the merits of the cause will otherwise be subserved." *Id.* § 8(D)(5). Our Code provides that amendments to the petition "shall conform substantially to the form for original petitions, except that *matters alleged in the original petition need not be repeated.*" Tenn. Code Ann. § 40-30-204(g)(1997) (emphasis added). Thus, the scheme of the post-conviction law is to have counsel amend the petition "so that when the petition is heard all grounds on which the petitioner may rely will be before the court." *State v. Smith*, 814 S.W.2d 45, 47 (Tenn. 1991); *see also David Honey v. State*, No. 03C01-9512-CC-00400, slip op. at 3-5 (Tenn. Crim. App., Knoxville, Mar. 18, 1997) (construing provisions of prior post-conviction relief law). The Post-Conviction Procedures Act contemplates the filing of only one petition; thus, all potential claims a petitioner has must be determined at the time of adjudication of the petition if they are to be ventilated in the post-conviction arena. *See* Tenn. Code Ann. § 40-30-202(c) (1997) (filing of a single petition is contemplated, and subsequent post-conviction petitions shall be summarily dismissed). Thus, appointed counsel may well file additional allegations without changing the original allegations. Furthermore, counsel must be circumspect in limiting the claims that are presented to the post-conviction court. Although counsel may suggest that some asserted grounds are meritless and might urge that those grounds be limited or modified, counsel in a post-conviction case has a duty to assert those claims that the petitioner "arguably has" and counsel must "diligently investigate and present all reasonable claims." Tenn. R. Sup. Ct. 28 §6(C)(2).

Thus, we conclude that the petitioner essentially supplemented, rather than restated, the petition when he amended the petition. This interpretation is buttressed by counsel's including in the amended petition a statement that the petitioner relies upon the allegations in the original petition and by the fact that most of the amended petition's issues were in fact supplemental to and not duplicitous of the original petition's issues. Based upon this view of the amended petition, the petitioner was empowered to present all issues raised in both documents, at least up to the point that counsel identified the issues at the commencement of the hearing.

We conclude that when counsel framed the issues at the commencement of the hearing, he effectively abandoned the issues not mentioned, as the post-conviction court essentially ruled. *See Michael Joseph Spadafina v. State*, No. W1999-00268-CCA-R3-PC, slip op. at 7 n.3 (Tenn. Crim. App., Jackson, Oct. 23, 2000); *Jeff Leon Walker v. State*, No. 02C01-9408-CC-00161 (Tenn. Crim. App., Jackson, Apr. 26, 1995). Based upon the lower court's request that counsel define the issues in contention, post-conviction counsel's response, and the state's objection and complaint of lack of notice, the trial court, which was entrusted with the discretion to admit evidence, *State v. Cauthern*, 967 S.W.2d 726, 743 (Tenn. 1998), did not abuse that discretion when it sustained the state's objection.[4]

## II. Issues of Ineffective Assistance of Counsel
## Addressed by Lower Court.

On appeal, the petitioner has limited the issues to whether trial counsel performed ineffectively when he failed to inform and advise the petitioner about his rights with respect to testifying at trial and failed to interview witnesses and to adequately consult with the petitioner prior to trial.

### (1) Trial Counsel's Failure to Inform and Advise the Petitioner.

The petitioner does not argue on appeal that he did not understand his rights to testify and to avoid testifying. Indeed, the petitioner testified at the evidentiary hearing that he knew he had a right to testify and a right not to testify. Rather, he argues that his trial counsel failed to opine for the petitioner's benefit, or otherwise to seek a trial court ruling to determine, which of his prior convictions would be admissible for impeachment purposes should he testify. He claims that, at best, the lack of information and advice hampered him from making a knowing, intelligent waiver of the right to testify at trial, and at worst, he posits that counsel led him to erroneously believe the prior drug convictions would have been admissible, causing him to eschew testifying when otherwise he would have taken the stand to refute Strong's and Howell's testimony.

At the evidentiary hearing, the petitioner testified about several prior convictions. He admitted that he was convicted of possession of marijuana in Franklin County in 1982. He denied being convicted in Rutherford County in January 1983 and again in January 1988 of casually exchanging a controlled substance and in March 1987 of felony marijuana possession. He admitted that he was convicted in Rutherford County in August 1983 of selling cocaine and of selling marijuana, but he claimed to be innocent of the latter offense. He further claimed he was tricked into pleading guilty to unlawful possession of a controlled substance in November 1989 in Lincoln

---

[4]We note that the only issue that was actually affected by the trial court's ruling was the *Jencks* issue. As we mentioned when we narrated the post-conviction testimony in this opinion, post-conviction counsel cross-examined trial counsel without objection about the other claims of ineffective assistance of counsel contained in the original petition, and without belaboring the issue further, we discern that trial counsel either disputed the petitioner's claims or evinced sound tactical or strategic bases for the actions taken.

County and claimed that "two drug dealers . . . came into court and lied and got [him] convicted for selling drugs," resulting in a February, 1991 Lincoln County conviction of selling cocaine.

Trial counsel testified that he and the petitioner discussed the possibility of the petitioner testifying, that he told the petitioner that at least a couple of the prior convictions would be used against him, that the petitioner did not indicate that he wished to testify, and that counsel "strongly advised him not to testify." Counsel testified that his recommendation against the petitioner's testifying was not grounded upon the admissibility of prior convictions; rather, he thought that the petitioner would not make a good witness and would adversely impress the jury.

In denying the petitioner relief on this issue, the post-conviction court "took judicial notice of its practice [at the time] this case was tried, and before the Supreme Court clarified the law" and determined that at trial it would have allowed "generic felony convictions to impeach the defendant." Presumably, the post-conviction judge was referring to our supreme court's decisions in *State v. Taylor*, 993 S.W.2d 33 (Tenn. 1999) and *State v. Galmore*, 994 S.W.2d 120 (Tenn. 1999). In these cases, the supreme court disapproved of impeaching defendants via prior convictions of unnamed felonies. *Taylor*, 993 S.W.2d at 35; *Galmore*, 994 S.W.2d at 122; *see also State v. Mixon*, 983 S.W.2d 661, 674-75 (Tenn. 1999) (where defendant was charged with various sex offenses and, after testifying at trial, was impeached via a prior conviction of sexual battery, high court held that, pursuant to Tennessee Rule of Evidence 609, the trial court erred in allowing impeachment via a prior conviction that was "identical to one of the crimes for which Mixon was tried and substantially similar to the other charged offenses," the danger of unfair prejudice outweighing the probative value on credibility).

We note in the present case that the post-conviction court lent credence to trial counsel's advice that a couple of the prior convictions would have been admissible when it opined that, at the 1996 trial, it would have allowed evidence of "generic" felonies for impeachment purposes. In *State v. Ross Jones*, No. 01C01-9405-CR-00175, slip op. at 8-9 (Tenn. Crim. App., Nashville, Feb. 9, 1995), this court approved the use of generic or unnamed felony convictions to impeach the defendant. *But see State v. Summerall*, 926 S.W.3d 272, 277 (Tenn. Crim. App. 1995) (criticizing *Ross Jones*; decided in 1995 but not published until 1997). The 1996 trial in the present case occurred before *Taylor* and *Galmore* were filed. We believe that the post-conviction court concluded that it would have admitted the prior felony convictions as "generic" convictions had the petitioner testified at his 1996 trial. Thus, we believe that counsel's 1996 advice was reasonably based upon existing law and explains the lack of a Rule 609 challenge. At any rate, had counsel challenged the prior felony convictions pursuant to Rule 609, we believe that the trial court would have indeed admitted evidence of the timely felony convictions as "generic" felonies.[5]

---

[5]Tennessee Rule of Evidence 609(d) sets forth time limits for the use of prior convictions for impeachment purposes. The record on appeal in the present case contains insufficient information to allow us to discern which of the defendant's prior felony convictions were timely offered at his 1996 trial.

Furthermore, counsel strongly recommended that the petitioner not testify and would have so recommended even if the prior convictions were excluded. The petitioner did not request to testify despite knowing his rights, and we surmise that he would have followed counsel's advice, regardless of the admissibility of prior convictions.

At any rate, the petitioner cannot establish prejudice by merely showing that he would have testified had counsel's advice been somehow prescient about the use of prior convictions. To establish prejudice, he must demonstrate a reasonable probability that, but for any errors of counsel, the result of the proceeding would have been different. We conclude that the petitioner has failed to clearly and convincingly establish such a probability sufficient to undermine confidence in the verdict. Counsel's opinion that the petitioner's trial testimony would have alienated the jury is somewhat borne out by the tenor of the petitioner's post-conviction testimony that revealed a penchant for blaming others for his criminal behavior. At any rate, the evidence against him at trial was strong, and in his post-conviction bid, he has not shown that his testifying at trial would probably have produced a different result.[6]

Accordingly, we discern no validity to this claim.

### (2) Trial Counsel's Failure to Interview a Witness and Confer with the Petitioner.

In this issue, the petitioner claims that counsel ineffectively assisted him when he failed to interview Francine Strong and failed to confer adequately with the petitioner in preparation for trial.

The petitioner's appellate complaint about counsel's failure to interview witnesses is that Francine Strong testified at the post-conviction hearing that, had defense counsel interviewed her prior to trial, she would not have yielded to the pressure that law enforcement officers brought to bear on her to identify the petitioner as the man who sold drugs to Agent Howell. The flaw in this claim is that, following the evidentiary hearing, the post-conviction judge specifically found that Francine Strong was not a credible person. We defer to that credibility assessment. Moreover, the petitioner was identified not only by Strong but also by Agent Howell, whose identification of the petitioner was reaffirmed at the evidentiary hearing. Thus, even if trial counsel was remiss in not interviewing Ms. Strong before the day of trial, the petitioner has demonstrated no prejudice.

---

[6]Petitioner's trial also predated the supreme court's decision in *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999). *Momon* held that the right to testify must be personally waived by the criminal defendant, and the supreme court articulated procedural guidelines to ensure personal waiver of the right. The supreme court emphasized, however, "that neither the right to testify . . . nor the procedural protections adopted to preserve that right are new constitutional rules which must be retroactively applied." *Id*. at 162-63. The supreme court added, "Trial courts should adhere to these procedural guidelines in all cases tried or retried after the date of this decision." *Id*. at 163. In the present case, the petitioner does not maintain that he did not understand his right to testify or his right not to testify.

The petitioner's last claim of ineffective assistance of counsel is that Mr. Barrett failed to adequately meet with him prior to trial, keeping him in the dark about the state's prospective proof until four days prior to trial. Mr. Barrett testified that he had between five and ten pretrial conversations with the petitioner, including an extensive meeting on Thursday before the Monday trial. At this meeting, counsel played the drug transaction tape for the petitioner and reviewed with him information about the state's case which he had gleaned from responses to his discovery and bill-of-particulars motions. Counsel testified that he and the petitioner "had a meeting of the minds as to probably what the general nature of the testimony would be." Counsel testified that the pretrial assessment of the prospective evidence turned out to be generally accurate. Counsel told the petitioner what "the strengths and weaknesses of our case [were]." He testified that the petitioner is "intelligent[,] . . . pretty knowledgeable . . . [, and] we had a meaningful conversation."

The post-conviction court accredited Mr. Barrett's testimony and said, "[T]he long and short of it is that Mr. Barrett was prepared for trial" and "his consultation with his client was adequate and falls within the range of competence as demanded by *Baxter v. Rose*." The evidence in the record does not preponderate against the court's factual findings, and we agree that, based upon the facts as found, trial counsel's performance met the applicable standard for effective assistance.

Therefore, finding that the lower court's denial of post-conviction relief is supported by the record, we affirm.

_____
JAMES CURWOOD WITT, JR., JUDGE